**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**KIM T. BOISEY,**

                            **Plaintiff,**                5:14-cv-346
                                                                           (GLS)
                    v.

**COMMISSIONER OF SOCIAL
SECURITY,**

                            **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Amdursky, Pelky Law Firm            GREGORY R. GILBERT, ESQ.
26 East Oneida Street
Oswego, NY 13126

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN     JASON P. PECK
United States Attorney                 Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Kim T. Boisey challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Boisey's arguments, the court affirms the Commissioner's decision and dismisses Boisey's complaint.

## II. Background

On June 18, 2011, Boisey filed an application for DIB under the Social Security Act ("the Act"), alleging disability since March 30, 2011. (Tr.[1] at 49, 132-39.) After her application was denied, (*id.* at 55-60), Boisey requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 53-54). A hearing was held on October 22, 2012. (*Id.* at 22-48.) On October 26, 2012, the ALJ issued a decision denying the requested benefits, (*id.* at 7-21), which became the Commissioner's final determination upon the Appeals Council's denial of review, (*id.* at 1-6).

Boisey commenced the present action by filing her complaint on

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 8.)

March 27, 2014, wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 10, 11.)

### III. Contentions

Boisey contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 10 at 5-10.) Specifically, Boisey argues that the ALJ erred in her determination that Boisey's headaches were not a severe impairment, and did not properly assess the medical opinions of record or Boisey's credibility, which tainted her residual functional capacity (RFC) assessment and her ultimate conclusion that Boisey could return to her past relevant work. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 11 at 5-15.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 10 at 3; Dkt. No. 11 at 2.)

### V. Standard of Review

3

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Evaluating Record Evidence

Boisey first argues that the ALJ erred by affording significant weight to the opinion of Dr. Ammahi Manyam, a consultative examiner, and not giving controlling weight to the medical records submitted by Boisey's treating physicians. (Dkt. No. 10 at 5-6.) The Commissioner asserts that the ALJ properly weighed the record evidence in assessing Boisey's RFC. (Dkt. No. 11 at 5-11.) The court agrees with the Commissioner.

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3).

An ALJ's RFC determination must be supported by substantial evidence[2] in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c). "Nevertheless, where the evidence of record permits [the

---

[2] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

5

court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to [her] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (internal quotation marks and citation omitted).

Here, the ALJ found that Boisey had the RFC "to perform light work . . . except [she] would require an at-will sit/stand option and cannot perform production rate or pace work," and that Boisey "can be expected to be off task up to [ten percent] of the workday in addition to her normal work breaks." (Tr. at 13.) Based on this RFC, the ALJ determined that Boisey is capable of performing her past relevant work as a customer service representative, and is therefore not disabled. (*Id.* at 16-17.) Boisey first argues that the ALJ erred in her RFC determination by assigning "great weight" to the opinion of Dr. Manyam and "little weight" to Boisey's treating physicians, Drs. Joseph Catania, Carri Jones, Anne Calkins, and Richard Zogby, (*id.* at 16), and that, instead, the opinions of these treating physicians should have been afforded controlling weight. (Dkt. No. 10 at 5-6.) As support, Boisey simply summarizes the treatment notes of these

6

medical sources, and concludes that these notes demonstrate that her treating physicians' opinions were well supported by medically acceptable techniques. (*Id.*)

However, as explained by the ALJ in her decision, the opinions from Boisey's treating physicians simply describe the status of her medical conditions and diagnoses without "express[ing] any limitations of [Boisey]'s capabilities." (Tr. at 16.) Despite the lack of any indication as to how Boisey's impairments affect her ability to work, these opinions go on to conclude that Boisey is disabled. (*Id.* at 228, 513, 559, 572, 580.) The ultimate determination of whether a claimant is disabled is a determination that is reserved to the Commissioner, and the ALJ was therefore justified in giving little or no weight to such opinions. *See* 20 C.F.R. § 404.1527(d)(1); SSR 96-5p, 61 Fed. Reg. 34,471, 34,473 (July 2, 1996) (explaining that the determination of whether a claimant is disabled is an issue reserved for the Commissioner, and thus such opinions are not entitled to controlling weight).

Additionally, these opinions were inconsistent with that of consultative examiner Dr. Manyam. While many of Boisey's treating physicians opined that she was either completely or partially disabled, Dr.

7

Manyam opined that Boisey had no exertional limitations and could thus engage in sitting, standing, walking, lifting, and bending. (Tr. at 352-56.) The ALJ also pointed to other "relatively mild" examinations, (*id.* at 16), which indicated, for example, that Boisey was in "no acute distress," with a normal gait, (*id.* at 476).

Where, as here, a treating physician's opinion is contradicted by substantial evidence in the record—which may include the opinion of a consultative examiner, *see Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)—it is not necessarily entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c)(2); *Halloran*, 362 F.3d at 32. Although Boisey points to evidence that, she argues, supports her contention that she could not perform light work as found by the ALJ in her RFC determination, "whether there is substantial evidence supporting the [claimant]'s view is not the question," and instead, the court must "decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). Here, the ALJ adequately discussed the substantial evidence of record supporting her determination that Boisey

8

was capable of light work,[3] and the weight afforded to the various opinions by the ALJ, for reasons which are fully articulated in her written decision, is free of legal error and supported by substantial evidence. (Tr. at 13-16.) As such, the court affirms the ALJ's RFC determination.

**B.    Severity Determination**

Next, Boisey argues that the ALJ erred in failing to find her headaches to be a severe impairment under the regulations. (Dkt. No. 10 at 6-8.) The Commissioner, on the other hand, argues that the ALJ correctly determined the severity of Boisey's impairments, and any error was, at most, harmless, because the ALJ found Boisey to have other severe impairments and continued beyond this step of the sequential evaluation. (Dkt. No. 11 at 11-12.) The court agrees with the Commissioner.

At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). A finding of not

---

[3] Under the regulations, light work requires lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds. *See* 20 C.F.R. § 404.1567(b). Further, "the full range of light work requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday." SSR 83-10, 1983 WL 31251, at *6 (1983).

severe is appropriate when an impairment, or combination of those impairments, "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1521(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including: "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," as well as "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." *Id.* § 404.1521(b). "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe." *Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, No. 6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)). The omission of an impairment at step two may be deemed harmless error, particularly where the disability analysis continues and the ALJ later considers the impairment in her RFC determination. *See Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012); *see also Plante v. Astrue*, No. 2:11-CV-77,

2011 WL 6180049, at *4 (D. Vt. Dec. 13, 2011).

Here, at step two, the ALJ determined that Boisey suffered from the following severe impairments: post cervical and lumbar spinal fusion, and degenerative disc disease. (Tr. at 12.) Although the ALJ did not specifically mention Boisey's headaches as a severe impairment at step two, the ALJ continued the disability analysis and did expressly consider Boisey's headaches in reaching her RFC determination. (*Id.* at 14-16.) Specifically, the ALJ referred to record evidence showing that Boisey's headaches were "completely resolve[d] with analgesic pain medication," and that she did not appear to ever specifically seek treatment for her headaches. (*Id.* at 15-16, 352.) Furthermore, Boisey had been able to continue working despite her issues with headaches, and they were found to "not affect her ability to work." (*Id.* at 15, 274.) Accordingly, the court finds that the ALJ's determination that Boisey's headaches caused only mild limitations of functioning, and were, therefore, not severe under the regulations, is supported by substantial evidence. In any event, as noted by the Commissioner, because the ALJ continued beyond step two and did in fact consider Boisey's headaches in the RFC evaluation, the failure to classify them as a severe impairment at step two is, at most, harmless

11

error, and not a basis for remand here. *See Tryon*, 2012 WL 398952, at *4.

## C. <u>Credibility</u>

Boisey next argues that the ALJ did not properly assess her credibility because she failed to explicitly consider and/or assess each factor set forth in the applicable regulations, specifically the side effects of her medication. (Dkt. No. 10 at 8-9.) In response, the Commissioner asserts that the ALJ's credibility determination is free of legal error and supported by substantial evidence. (Dkt. No. 11 at 12-14.) The court again agrees with the Commissioner.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," she "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the

12

weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ determined that Boisey's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (Tr. at 14.) Boisey first contends that "the ALJ erred in failing to fully discuss and evaluate the medications taken by [Boisey] and the side effects and limiting effects these medications have on her ability to function." (Dkt. No. 10 at 8-9.) Boisey asserts, without any citation to the record, that her "medication could certainly be expected to impact her ability to function and

13

concentrate, and, as a result, impact her [RFC]." (*Id.*) However, contrary to Boisey's assertion, the ALJ did in fact specifically address the side effects of her medications, and determined that these alleged side effects caused no additional limitations. (Tr. at 16.) Notably, the ALJ points to instances in the record where Boisey represented to her physician that she experienced no side effects from her medication, other than "[f]eel[ing] warm." (*Id.* at 16, 548, 557.)

Further, the ALJ properly discounted the credibility of Boisey's reports regarding the limiting effects of her symptoms because they are contradicted by other record evidence, primarily her reports of daily activities. *See* 20 C.F.R. § 404.1529(c)(3)(i) (indicating that a claimant's daily activities are relevant to determining the severity of her symptoms and impairments). For example, although Boisey reported constant neck and back pain, she was able to carry at least twenty-five pounds at her prior job, (Tr. at 29), and drive roughly twenty miles per week, (*id.* at 28). While she noted that she required a cane to assist her when walking, (*id.* at 35, 162), she did not use a cane at either her hearing or at her consultative examination, (*id.* at 35-36, 354), and was found to be ambulating well, without a limp, at follow-up examinations, (*id.* at 260). Additionally, Boisey

14

was able to dress and bathe herself, and go grocery shopping. (*Id.* at 39, 353.)

In sum, after expressly laying out the applicable regulations and the relevant factors, the ALJ made a credibility determination which is supported by substantial evidence in the record and is not patently unreasonable. (*Id.* at 13-16); *see Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." (internal quotation marks and citation omitted)). The court therefore declines to remand on this basis.

D. **Ability to Return to Past Work**

Lastly, Boisey contends that, because of the errors alleged above, the ALJ's RFC determination was erroneous, and tainted the ultimate determination that Boisey could return to her past relevant work as a customer service representative—and thus the finding that she is not disabled. (Dkt. No. 10 at 9-10.) For substantially the reasons set forth above, the court disagrees.

"[I]n the fourth stage of the [disability] inquiry, the claimant has the burden to show an inability to return to her previous specific job *and* an

inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003). In other words, a claimant is not disabled if she can perform her past relevant work, either as she actually performed it, or as it is generally performed in the national economy. *See* SSR 82-61, 1982 WL 31387, at *2 (1982); *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981). "'[I]n order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities.'" *Kochanek v. Astrue*, No. 08-CV-310, 2010 WL 1705290, at *11 (N.D.N.Y. Apr. 13, 2010) (quoting *Kerulo v. Apfel*, No. 98 CIV. 7315, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999)).

Boisey argues generally that her own testimony regarding her limitations should have been "properly credited," and, if it had been, "the ALJ would have found an even greater limitation," thus rendering Boisey unable to perform her past work. (Dkt. No. 10 at 10.) Boisey also asserts that the ALJ's RFC determination "is arbitrary and not supported by substantial evidence." (*Id.*) However, for the reasons discussed above, the ALJ properly weighed the opinion evidence of record and Boisey's

16

credibility, and there is substantial evidence supporting her RFC determination. Accordingly, having rejected Boisey's earlier arguments, which are relied upon here, the court declines to disturb the ALJ's ultimate determination that Boisey can return to her past relevant work.

## E. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision, as it correctly applies the relevant legal standards and is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Boisey's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 20, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court

17